The PORT AUTHORITY POLICE BENEVOLENT ASSOCIATION, INC., Plaintiff-Appellant,

v.

The PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Defendant-Appellee.

No. 492, Docket 82–7469.

United States Court of Appeals, Second Circuit.

Argued Nov. 10, 1982.

Decided Jan. 12, 1983.

Gerald Kadish, New York City (Richard B. Feldman, Forster & Kadish, New York City, on the brief), for plaintiff-appellant.

Patrick J. Falvey, New York City (Arthur P. Berg, Philip A. Maurer, Sholem Friedman, Joan F. Bennett, New York City, on the brief), for defendant-appellee.

Before KAUFMAN, TIMBERS, and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

Plaintiff, The Port Authority Police Benevolent Association (PAPBA), appeals from a May 13, 1982, order of the United States District Court for the Southern District of New York (Richard Owen, Judge) denying its motions for class certification and for a preliminary injunction restraining defendant, The Port Authority of New York and New Jersey (Port Authority), from promoting any of its employees to the rank of sergeant. The complaint alleges that the Port Authority has suppressed constitutionally protected expression by denying and threatening to deny promotion to police officers who criticized the Port Authority. Relying on *Mt. Healthy City School Board v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the District Court premised its rulings on the assumption that the only members of the union who could prevail on the merits are those who would have been promoted but for their criticism of the Port Authority. Because this assumption was incorrect, we reverse the District Court's rulings, and remand for reconsideration of plaintiff's motions.

Defendant Port Authority is a bi-state agency that operates transportation facilities between New York and New Jersey. To protect passengers using its lines, Port Authority employs its own police force, consisting of approximately 995 officers, 113 sergeants, 85 lieutenants, 3 deputy inspectors, and 1 inspector. Plaintiff PAPBA is a union that represents the officers employed by defendant.

Prior to 1969, promotion of Port Authority officers to sergeant was determined by the results of a written examination. Those who passed the examination were ranked according to their test scores. As the need arose for sergeants, the highest ranking officer was promoted.

In 1969, the Port Authority revised its promotion procedure to permit the exercise of substantial discretion in the selection of sergeants. Under the revised procedure, officers who passed the written exam were no longer ranked but instead were placed in a general pool of qualified candidates. Promotions out of that pool were then made on the basis of a "careful consideration of the officer's qualifications for the position sought." [1]

In 1980, the Port Authority revised its promotion procedure again. Under the second revision, officers were given a written test, a "group aptitude" test, and an oral interview. Selection for promotion was then determined according to an overall assessment, apparently unguided by objective standards, of an officer's test scores and performance at the interview.

---

1. Soon after this revision took effect, the PAPBA began an action in the New York State Supreme Court alleging, among other things, that the newly adopted criteria for promotion posed an intolerable risk of arbitrary or discriminatory action. The Court declined to interfere with the challenged procedure, holding that it was not facially unconstitutional, and that suit could be reinstituted should the discretion complained of be abused. *Sgaglione v. The Port of New York Authority,* 61 Misc.2d 1058, 307 N.Y.S.2d 714 (1970), *aff'd,* 36 A.D.2d 1027, 322 N.Y.S.2d 974 (1st Dep't 1971).

On March 25, 1981, the PAPBA brought this suit under 42 U.S.C. § 1983 (1976 & Supp. IV 1980), alleging that the Port Authority systematically manipulated its criteria for promotion to punish officers who criticized Port Authority policy. The PAPBA asserted that this manipulation of promotional criteria deterred all officers from exercising their First Amendment rights and sought injunctive relief substantially narrowing the Port Authority's discretion in the selection of sergeants. Relief in the form of promotions was not sought.

The PAPBA moved for an order pursuant to Rule 23(c)(1), Fed.R.Civ.P., certifying its membership as a class. In support of this motion, the PAPBA submitted affidavits from five police officers who claimed either to have been denied promotion or to have been threatened with such denial in retaliation for criticizing Port Authority policy. These claims were intended to establish the existence of an unconstitutional practice sufficiently widespread to deter expression by each PAPBA member, thus entitling the membership to maintain the action as a class.

While the class certification motion was pending, the PAPBA requested a temporary restraining order preventing the imminent promotion of four officers and endeavored to move for a preliminary injunction barring all promotions during the pendency of trial. To justify the requested interlocutory relief, the PAPBA urged, among other things, that the asserted chilling of protected expression constituted injury that was irreparable as a matter of law.

On May 13, 1982, the District Court filed an order denying the class certification motion, the temporary restraining order, and the motion for a preliminary injunction.[2] Class certification was denied for lack of a common question of law or fact. That ruling was asserted by the Court to make success on the merits improbable and accordingly to require denial of a preliminary injunction. The PAPBA was directed to amend its pleadings to include individual officers suing on their own behalf for individualized relief. The PAPBA moved for reconsideration and, in the alternative, for certification of the ruling on the class motion for appeal pursuant to 28 U.S.C. § 1292(b). Both requests were denied. This appeal followed.

A. *Appealability*

■ We must first determine whether we have jurisdiction to review the District Court's denial of plaintiff's motion for class certification. Normally disposition of a class certification motion is not reviewable by interlocutory appeal. *Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978). An exception to this general rule exists, however, where the order disposing of the class action motion contains an appealable ruling and that appealable ruling and the class certification are substantially interdependent. *Marcera v. Chinlund,* 595 F.2d 1231, 1236 n. 8 (2d Cir.), *vacated on other grounds sub nom. Lombard v. Marcera,* 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979); *Sanders v. Levy,* 558 F.2d 636, 643 (2d Cir.1976), *adhered to on this point en banc,* 558 F.2d 646 (1977), *rev'd on other grounds sub nom. Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253

---

**2.** The District Court's order does not expressly state that a motion for a preliminary injunction is being denied. In fact, it is not entirely clear that plaintiff properly placed a motion for a preliminary injunction before the District Court. Plaintiff initially submitted to the District Court an order to show cause why a preliminary injunction should not be granted. However, the show cause order was never signed by the District Judge, and no separate motion for a preliminary injunction was filed. Nevertheless, it is sufficiently apparent that the District Judge understood from the submission of the request for a show cause order that he

was being asked to issue a preliminary injunction against all promotions, in addition to the requested temporary restraining order against four imminent promotions. The Court cited *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.,* 604 F.2d 755 (2d Cir.1979), which sets forth the standards for a preliminary injunction, and based its ruling on a finding that one test for a preliminary injunction, probable success on the merits, had not been met. Moreover, plaintiff's affidavits stated that they were submitted in support of a motion for a preliminary injunction.

(1978); *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 522 F.2d 1235, 1237–38 (7th Cir.1975), *aff'd on rehearing,* 538 F.2d 164, 166 n. 2, *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). In such circumstances, an appellate court with jurisdiction over the appealable ruling may also exercise "pendent appellate jurisdiction" over the otherwise unappealable disposition of the class certification motion.

■ Although stringent, the requirements for the exercise of "pendent appellate jurisdiction" are satisfied here. The District Court's denial of the request for a preliminary injunction is clearly appealable. 28 U.S.C. § 1292(a)(1) (1976). That ruling was based solely on a finding of a lack of probability of success on the merits. As the District Court expressly stated, the finding regarding unlikelihood of success was itself based solely on the denial of class certification. A class certification denial so inextricably related to an appealable denial of a preliminary injunction may itself be reviewed on appeal.

## B. *Class Certification*

■ The District Court relied principally on *Mt. Healthy City School Board v. Doyle, supra,* to support the denial of class certification. In *Mt. Healthy,* the Supreme Court held that a public employee dismissed in retaliation for constitutionally protected expression was not entitled to reinstatement if his employer would have discharged him in any event on alternative, permissible grounds. Apparently believing that this lawsuit seeks promotions, the District Court reasoned that entitlement to promotions would require individualized consideration of the qualifications of each officer seeking promotion and assessment of whether some permissible ground existed that would justify denial of promotion, apart from any protected expression. Noting that the circumstances of each officer would inevitably differ, the District Court concluded that there was no question of law or fact common to the entire class of officers. Though recognizing a First Amendment claim, the Court ruled that "plaintiff's allegations of various

chills of first amendment rights do not state issues which are common to members of the proposed class."

The District Court misperceived the nature of the claim. The plaintiff and the class it seeks to represent do not sue to obtain promotions; they sue to prevent the suppression of protected speech. Since it is claimed that speech has been suppressed by actual and threatened denials of promotions, the free speech claim obviously implicates the Port Authority's promotion practices. But the free speech claim can be litigated without application of *Mt. Healthy's* procedure for determining whether any one officer is entitled to a promotion. If the plaintiff can prove that the Port Authority suppressed protected expression by denying or threatening to deny promotion, some relief would be warranted. The inhibiting of protected speech by threats alone would be sufficient; if protected speech has been the basis of an actual denial of promotion, evidence of such an occurrence would be even more probative of the First Amendment claim, and the force of such evidence would not be lessened by the fact, if such should be the case, that the outspoken candidate would have been denied promotion on some other ground. Of course, if a candidate can show that he would have been promoted but for his protected speech, such evidence would be highly probative on the First Amendment claim, but such evidence is not required from any officer, much less from the entire class of officers. The factual question that plaintiff alleges is common to the class is whether the Port Authority has let the membership know that protected speech critical of the Port Authority will lessen every officer's chances of promotion. Individualized satisfaction of the *Mt. Healthy* test is not necessary for the establishment of that fact.

Nor is a common question of fact precluded by the subtle standards that the District Court will be obliged to apply in determining whether this case involves protected speech. When public employees assert the right to criticize their employer, the Supreme Court has instructed in *Pickering v.*

**154**

Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968), that such claims are to be resolved by balancing "the interests of the [employee], as a citizen, in commenting upon matters of public concern" and "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Such balancing necessarily requires careful examination of the circumstances under which criticism by a public employee is voiced. *See MacFarlane v. Grasso*, 696 F.2d 217, 223 (2d Cir.1982). Though these circumstances will doubtless vary with respect to the PAPBA members who have spoken out, the common factual issue remains as to whether the Port Authority is suppressing protected expression. The plaintiff and the class it seeks to represent need not prove that every instance of criticism by a PAPBA member is protected under *Pickering;* all that must be shown is a practice of suppressing speech that is protected.

Since plaintiff has satisfied the requirement of a common question of law or fact, Rule 23(a)(2), the denial of class certification must be reversed, and the matter returned to the District Court for further consideration of whether the remaining requirements of Rule 23 have been met.

C. *Preliminary Injunction*

■ Since the preliminary injunction was denied solely because of the erroneous denial of the motion for class certification, the injunction denial must also be reversed and remanded for further consideration under the traditional standards. *See Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755 (2d Cir.1979). If the District Court concludes that the plaintiff has shown a probability of success on the merits, irreparable injury stemming from the threat to protected speech would seem to be present. In that event, the District Court would still have to determine whether the equities make it appropriate to grant the particular interim relief that has been requested: enjoining promotions pending trial on the merits.

The rulings appealed from are reversed, and the cause is remanded for further proceedings consistent with this opinion.