**SIMS VARNER & ASSOCIATES, INC., Plaintiff-Appellant,**

v.

**James J. BLANCHARD; the Dept. of Management & Budget for the State of Michigan; Robert Naftaly; William Kessler & Associates; Almon Durkee; Dr. Martha Bigelow; James Fry and Arthur D'Hondt, Defendants-Appellees.**

No. 85–1093.

United States Court of Appeals, Sixth Circuit.

Argued March 4, 1986.

Decided July 8, 1986.

Rehearing and Rehearing En Banc Denied Aug. 22, 1986.

Eric L. Clay, Lewis, White and Clay Detroit, Mich., Harold Pope, argued, for plaintiff-appellant.

Louis J. Caruso, Sol. Gen., Counsel of Record, Dept. of Atty. Gen., Arthur E. D'Hondt, argued, Asst. Atty. Gen., State Affairs Div., Lansing, Mich., Theodore Souris, Charles N. Raimi, argued, Bodman, Longley & Dahling, Detroit, Mich., for defendants-appellees.

Before MERRITT and WELLFORD, Circuit Judges, and PECK, Senior Circuit Judge.

WELLFORD, Circuit Judge.

Plaintiff-appellant, Sims Varner, is a minority-owned architectural firm and one of thirty-six unsuccessful applicants for a professional service contract to design a state building. Sims Varner originally sued the Governor of the State of Michigan, the Michigan Department of Management and Budget (the department responsible for procuring professional services for the State of Michigan), its director, and William Kessler & Associates, the architectural firm awarded the contract, because Sims Varner was not selected for the job. After the district court denied Sims Varner's request for an *ex parte* temporary restraining order on October 17, 1984, Sims Varner amended its complaint to add the state officers who had recommended the selection of Kessler and an Assistant Attorney General alleged to have advised those officers. Sims Varner based its claim on race discrimination and the failure to follow Michigan law providing for certain minority benefits.

Sims Varner alleges in the first amended complaint, *inter alia*, that under Michigan law the architectural selection procedure requires the Michigan Department of Management and Budget to award minority-owned firms fifteen nonmerit and racial preference bonus points in determining the firm to be awarded a professional services contract. Defendants awarded Sims Varner fifteen nonmerit points in a prefinal selection stage, which permitted Sims Varner to compete in the final selection stage. But defendants did not award Sims Varner fifteen nonmerit and racial preference bonus points in the final stage of selection. Without the award of these additional points, Sims Varner did not have the highest adjusted score in the competition for the contract. Sims Varner claims that defendants' failure to award it the nonmerit points in the final stage violated Michigan law and the fourteenth amendment of the Constitution of the United States through 42 U.S.C. §§ 1981 and 1983 (1982). Alternatively, Sims Varner claims the failure and refusal to make the contract award to plaintiff is racially motivated. Respecting its claims for immediate injunctive relief, Sims Varner added Kessler as a defendant.

On October 26, 1984, the district court heard Sims Varner's motion for a preliminary injunction. The court rendered an opinion from the bench in open court denying without prejudice Sims Varner's motion for a preliminary injunction because: (1) Sims Varner had failed to demonstrate an irreparable injury and an adequate remedy at law was available through monetary damages; and (2) Sims Varner had failed to demonstrate a substantial likelihood of success on the merits because the court found no basis for Sims Varner's claim that it was entitled to fifteen nonmerit racial preference points in the final score and there was no preliminary showing of racial discrimination.[1]

The state defendants then filed an Amended Motion to Dismiss And/Or Motion for Summary Judgment. After hearing arguments, the court entered an order on December 28, 1984, that (1) granted the motion to dismiss Governor Blanchard; (2) granted the motion for summary judgment in favor of Assistant Attorney General D'Hondt; (3) granted the motion to dismiss the Michigan Department of Management and Budget; (4) granted the motion to dismiss plaintiff's procedural and substantive due process claims for failure to state any claim upon which relief could be granted; (5) granted the motion for summary judgment dismissing Sims Varner's requests for injunctive relief; (6) granted the motion to dismiss Kessler; and (7) denied the motion to dismiss Sims Varner's equal protection claim based on allegations of racial discrimination.

Sims Varner appeals five of the district court's orders. The only jurisdictional is-

---

1. On November 15, 1984, the court granted in part the state defendants' motion for a protec-tive order. This is one of the motions plaintiff appeals.

sue on appeal is whether this court has interlocutory jurisdiction under 28 U.S.C. § 1292(a)(1) (1982), to hear certain portions of the five interlocutory orders. We conclude we have jurisdiction over only certain motions within the two December orders. For the reasons that follow, we affirm those portions of the December interlocutory orders over which we have jurisdiction.

## I.

We must first address whether Sims Varner properly has appealed the district court's five interlocutory orders.

### A. *The October and November Orders*

■ Sims Varner has appealed three interlocutory orders entered on October 17, 1984, October 31, 1984,[2] and November 15, 1984. Sims Varner did not appeal these orders until January 24, 1985.. It had thirty days from the date of entry of these orders in which to appeal. 28 U.S.C. § 2107 (1982). Since Sims Varner did not appeal the October and November orders within the specified time, we do not have jurisdiction to rule on their validity.

### B. *The Two December Orders*

Sims Varner asserts this court has jurisdiction under 28 U.S.C. § 1292(a)(1) regarding the two December orders.[3] One of the December 28 orders granted an "Amended Motion to Dismiss and/or for Summary Judgment of Defendant State of Michigan

officials and the Michigan Department of Management and Budget." The order states in part:

> That the request ... for equitable relief enjoining the state of Michigan and defendant Kessler & Associates from fulfilling their contract for architectual and engineering services for the Michigan Library/Museum and Archives Building is dismissed pursuant to a grant of summary judgment on this issue.

> That the request ... for equitable relief mandating the state of Michigan contract with plaintiff for architectual and engineering services for the Michigan Library/Museum and Archives Building is dismissed, pursuant to a grant of summary judgment on this issue.[4]

In *Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), the Supreme Court addressed whether a district court order effectively denying injunctive relief was immediately appealable under 28 U.S.C. § 1292(a)(1).[5] The court held that an appeal under section 1292(a)(1) required a showing that the interlocutory order might have a "serious, perhaps irreparable, consequence" and that the order can be "effectually challenged" only by immediate appeal. *Id.* at 84, 101 S.Ct. at 996. *Carson* emphasized that section 1292(a)(1) is a narrow exception to the normal policy against piecemeal appeals. *Id.* Other courts have stressed that whether the order appealed from addressed the

---

2. This order denied, without prejudice, Sims Varner's motion for a preliminary judgment.

3. § 1292. *Interlocutory decisions*
 (a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:
 (1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Island, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.

4. The order also (1) dismissed Governor Blanchard and Attorney General D'Hondt; (2) dismissed the Department of Management and

Budget for the State of Michigan; (3) dismissed plaintiff's procedural and substantive due process claims, pursuant to a grant of summary judgment; and (4) denied the motion to dismiss plaintiff's equal protection claim.
 The other December 28 order dismissed William Kessler & Associates.

5. The district court in that case had denied the motion to enter a proposed consent decree negotiated by the parties. The decree would have required the defendants to give hiring and seniority preference to blacks. 450 U.S. at 81, 101 S.Ct. at 995. Neither the parties nor the court of appeals disputed that the predominant effect of the proposed decree would have been injunctive. *Id.* at 84 n. 9, 101 S.Ct. at 996 n. 9.

merits of the case is an important factor in determining whether jurisdiction lies under section 1292(a)(1). *See, e.g., Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978); *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 261 (7th Cir.1984); *see also Stewart-Warner Corp. v. Westinghouse Electric Corp.*, 325 F.2d 822, 829–30 (2d Cir. 1963) (Friendly, J., dissenting) (an order striking a claim for injunctive relief on the merits necessarily has serious consequences, unlike "discretionary practice orders designed to avoid delay").[6]

■ We find the court does have jurisdiction in the present case. The order in the present case is in effect a final denial on the merits of all the equitable relief Sims Varner has sought respecting the award of the contract in dispute. We find that under *Carson* the interlocutory order in this case has serious consequences for Sims Varner that can only be "effectually challenged" by immediate appeal. A portion of the equitable relief Sims Varner has sought is the right to perform the architectural contract on the multimillion dollar state museum. The prestige and benefits that would accrue to Sims Varner if it performed the contract are arguably significant, albeit difficult to measure. Monetary damages alone may not compensate Sims Varner fully for the loss of the contract. Therefore, if Sims Varner could not appeal the order immediately, the serious adverse consequences discussed above likely would result before Sims Varner could appeal from the final judgment. The longer the delay in the appeal, the more likely Kessler will complete the contract. The more substantially completed the contract, the less likely Sims Varner will obtain a mandatory injunction awarding it the contract.[7]

## II.

■ Nevertheless, we believe the circumstances in this case implicate many of the concerns expressed in *Carson* that counsel in favor of limited jurisdiction over section 1292(a)(1) appeals. The order in the present case dismissed Sims Varner's request for an injunction to prohibit the state and Kessler from fulfilling their contract for architectural and engineering services. Kessler, however, in its brief filed with this court and in oral argument maintains its architectural contract is now substantially completed.[8] Sims Varner does not deny that Kessler has substantially performed the contract.[9] Substantial completion of

---

6. In *Brown v. Kerr McGee Chemical Corp.*, 767 F.2d 1234 (7th Cir.1985), the Seventh Circuit discussed the confusion among courts on the applicable scope of the *Carson* two-part serious consequence test. The circuit court noted that other courts had determined that the *Carson* test does not apply to interlocutory orders that both address the merits of the appellant's claim and dispose of all requests for injunctive relief. *Id.* at 1238 (citing cases). Other courts have held *Carson* applies to all appeals under § 1292(a)(1), regardless of whether the interlocutory order addressed the merits of the appellant's claim. *Id.* at 1238–39. The *Brown* court, however, found it unnecessary to resolve the conflict. Since the interlocutory order in *Brown* did not dispose of all injunctive relief, the court determined *Carson* applies under either conflicting view of its scope.

In the present case, however, the interlocutory order is a final denial of all injunctive relief on the merits. Therefore, some courts would apply *Carson* and some would not. But because we hold, as discussed below, that we have jurisdiction even if the *Carson* serious consequence test applies, this panel need not resolve the conflict among courts on the scope of *Carson*. Accordingly, we assume without deciding that *Carson* applies.

7. Ironically, even the delay caused by an interlocutory appeal has contributed to our decision to deny Sims Varner equitable relief. But Sims Varner is partly to blame, as discussed below.

8. In its brief dated August 5, 1985, Kessler represents that "by January 1986, Kessler will have completed roughly 75% of the contract."

9. Sims Varner suggested at oral argument that this court remand for an evidentiary hearing to determine the extent to which Kessler has substantially performed the contract. But we believe a remand unnecessary. Sims Varner strenuously argued below that the district court should grant a temporary restraining order or preliminary injunction to prevent the irreparable harm caused if Sims Varner lost the opportunity to fulfill the contract. The district court denied Sims Varner's motion in October 1984. Sims Varner did not appeal. Assuming Sims

the contract at this juncture presents very serious obstacles to granting injunctive relief in order to prevent the fulfillment of the contract by Kessler. This kind of injunctive relief would not give Sims Varner the initial equitable relief sought unless accompanied by a mandatory injunction awarding the contract to Sims Varner. But a mandatory injunction awarding the contract to Sims Varner would force the state to abandon Kessler's architectural work already substantially completed. Even in the event Sims Varner ultimately proves that legally the state should have awarded it the contract, we decline at this juncture to prohibit Kessler from fulfilling the contract and to penalize the taxpayers of the state in this fashion.

The notion supporting interlocutory jurisdiction is to give a party the opportunity to prevent an irreparable harm at an early stage when that opportunity will not exist upon a final disposition of the case. Sims Varner did not attempt a timely appeal regarding the denial of the preliminary injunction when it had the first opportunity to do so. It made no motion for reconsideration, and filed no subsequent motion for a stay to maintain the status quo pending the outcome of the appeal in order to hold up performance of the contract by Kessler. The equities, there-fore, weigh very strongly against granting Sims Varner that kind of extraordinary relief at this juncture, the consequence of which would entail discarding Kessler's architectural work and drawing new plans for the museum complex, with the attendant loss of time (already at least a year and a half) and public resources (purportedly the state already has spent over a million dollars in architectural fees and expenses). Sims Varner, under the circumstances, has not acted promptly to protect its interests in seeking extraordinary equitable relief. He who seeks equity of this sort must do equity and move expeditiously to prevent the kind of substantial change of position that has occurred, which is due in some measure to Sims Varner's inaction after the denial of its motion for a preliminary injunction. The equities favor permitting completion of plans already in progress and nearing completion. We decline to disturb the district court's refusal to grant injunctive relief on December 28, 1984.[10]

On remand the district court will be in a position after further proceedings to decide what relief, if any, may be appropriate in the event Sims Varner proves its claims of racial discrimination or the use of unlawful and improper procedures in the awarding of the architectural contract.[11] Our decision addressing the issues raised regarding

---

Varner was correct that it would be irreparably harmed by the district court's failure to grant the preliminary relief, the denial of the motion for that extraordinary relief was, in effect, a judgment on the merits of Sims Varner's request for equitable relief. Sims Varner failed to effect a timely appeal from that denial. At the time of oral argument, fifteen months had passed since the date Sims Varner contended it must have an immediate preliminary injunction to prevent irreparable harm caused by Kessler's undertaking of the architectural contract. This has brought about a radical change in the posture of the parties.

**10.** In one of the December 28 orders the district court dismissed Governor Blanchard on the ground Sims Varner alleged no facts implicating him as a necessary defendant. The court also dismissed Assistant Attorney General D'Hondt on the ground he was immune from liability in the present case. Sims Varner does not specifically address these rulings on appeal. The lower court further dismissed the Department of Management and Budget on the ground it had the same eleventh amendment immunity enjoyed by the State of Michigan. On appeal Sims Varner argues that the eleventh amendment does not bar the type of equitable relief it has sought. But since our holding denies Sims Varner all the equitable relief it has sought, the Department of Management and Budget is no longer a necessary party under Sims Varner's legal theory. In the other December 28 order, the district court dismissed Kessler on the ground that the only relief sought against it was equitable, and this relief was denied. Our affirmance of the lower court's denial of equitable relief similarly makes Kessler an unnecessary party.

**11.** We do not have jurisdiction under section 1292(a)(1) to review the trial court's dismissal of Sims Varner's due process claims. The court, however, may wish to consider its ruling further in light of evidence to be adduced upon further discovery opportunities respecting plaintiff's claim for damages and other relief.

extraordinary equitable relief on interlocutory appeal is not intended to intimate any judgment on the merits of Sims Varner's remaining claims. We AFFIRM the actions of the district court only respecting those matters found to be properly within our jurisdiction on this appeal.