**In re GRAND JURY PROCEEDINGS.**

**David KINAMON, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

No. 93–15596.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1994.

Decided Jan. 19, 1995.

Mark A. Kilburn, Langton & Kilburn, Reno, NV, for appellant.

Leslie K. Simon, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, DC, for appellee.

Before: PREGERSON, WIGGINS, Circuit Judges; and FONG,* District Judge.

FONG, District Judge:

## INTRODUCTION

David Kinamon ("Kinamon") interlocutorily appeals the district court's order denying his ex parte motion to quash a grand jury subpoena of the Reno police department's internal investigation report of an incident between Kinamon and other Reno police officers. We REVERSE and REMAND.

## BACKGROUND

Kinamon is an officer in the Reno, Nevada police department ("RPD"). The RPD conducted an internal affairs investigation into Kinamon's December 1991 arrest of George John Bermeo ("Bermeo") in a Reno, Nevada casino detention room, concerning allegations that Kinamon violated Bermeo's rights. During this investigation, the RPD informed Kinamon, in a written "admonishment," that he would be required to answer all questions related to the performance of his official

*The Honorable Harold M. Fong, U.S. District Court Judge for the District of Hawaii, sitting by designation.

duties, subject to potential dismissal if he refused to answer. This admonishment additionally advised Kinamon that "[any] statements or any information or evidence which is gained by reason of such interrogation cannot be used against you in a criminal proceeding." Lieutenant Ondra Berry of the RPD participated in the investigation and filed an affidavit (the "Berry Affidavit") attesting that the report resulting from the investigation (the "internal affairs report") contained Kinamon's statements compelled pursuant to the admonishment.

On January 28, 1993, the Nevada district court issued a subpoena (at the request of Jim Gallegos, Trial Attorney with the Civil Rights Division of the Department of Justice), directed to Chief Richard Kirkland ("Kirkland") of the RPD. This subpoena required Kirkland to appear to testify before a federal grand jury, bringing with him a "copy of the internal affairs investigative report regarding the incident between Police officer David R. Kinamon and George John Bermeo." The subpoena also contained a note stating: "COMPLIANCE MAY BE EFFECTED BY FURNISHING THE ABOVE MATERIAL TO THE AGENT SERVING THIS SUBPOENA OR BY MAILING TO THE FOREMAN OF THE GRAND JURY, C/O U.S. ATTORNEY, 100 W. LIBERTY ST., SUITE 600, RENO, NEVADA, 89501, ON OR BEFORE THE ABOVE DATE."

This subpoena was served on Kirkland on February 18, 1993; Kinamon received no notice of the subpoena. Kinamon learned of the subpoena when a representative of the City of Reno (the "City") called Kinamon's counsel to inquire as to whether he or Kinamon had been served with a copy of the subpoena or noticed in any other manner, and what their position was regarding the release of the internal affairs report. At this point, Kinamon's counsel requested and received a copy of the subpoena from the City.

On February 23, 1993, Kinamon filed an Ex Parte Motion to Quash Subpoena Duces Tecum (the "motion to quash") pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure.[1] Kinamon alleged that the internal affairs report contained his compelled statements which are protected from use in any manner in any criminal proceeding. Kinamon further argued that since the report itself was a fruit of such compelled statements it was privileged under the Fourth and Fifth Amendments and production of such report should be quashed as unreasonable and oppressive. While the City later joined Kinamon's motion to quash, this joinder was filed after the court had already ruled on the motion.

On February 24, 1993, the United States District Court for the District of Nevada, Judge Edward C. Reed, Jr., issued a Minute Order denying Kinamon's motion. The court based its decision on two theories. First, the Court stated that "it is highly doubtful that the Reno Police have the authority to grant Kinamon use immunity[.]" Second, the court held that even if use immunity could be granted to Kinamon, "such immunity would not protect him in a grand jury investigation[;] [a] Grand Jury investigation is not a criminal matter." In closing, the court noted that the internal affairs admonishment and the validity of any immunity granted by the RPD would only be relevant "in the event that Kinamon were prosecuted on the basis of information in or derived from the internal affairs investigation," but that "[a]t this time ... there is no criminal matter pending against Kinamon."

On March 4, 1993, the City filed a Motion for Reconsideration (the "motion for reconsideration") of the court's February 24 order denying the motion to quash. On March 23, 1993, the court, again by Minute Order, denied the City's motion for reconsideration. In so doing, the court reiterated its position that "the use of Kinamon's compelled statements in a grand jury investigation did not violate his Fifth Amendment rights even if

---

1. Fed.R.Cr.P. Rule 17(c) states:
    (c) For Production of Documentary Evidence and of Objects. A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. *The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive.* ...
    (Emphasis added).

he had been granted use immunity[;] [a] grand jury investigation is not a criminal proceeding and therefore, the compelled statements are not being used against him [Kinamon] when presented to the grand jury." Since both the City's motion for reconsideration and the government's response to that motion were filed under seal, the court ordered its Minute Order to be similarly filed.

Kinamon filed a timely Notice of Appeal on March 26, 1993, in accordance with F.R.A.P. 4(a). The City timely filed its Notice of Appeal on the same day. The City subsequently voluntarily dismissed its appeal on July 28, 1993.

## STANDARD OF REVIEW

■ A district court's denial of a motion to quash a subpoena is reviewed for abuse of discretion. *See In re Grand Jury Subpoenas,* 803 F.2d 493, 496 (9th Cir.1986).

## DISCUSSION

### I. *Validity of Kinamon's Appeal*

■ As a general rule, appellate courts have jurisdiction over appeals from all final decisions of the district courts of the United States. *See* 28 U.S.C. § 1291. While appellate courts additionally have jurisdiction over appeals from several forms of interlocutory orders, the denial of a motion to quash subpoena is not included among this limited list. *See* 28 U.S.C. § 1292. However, as Kinamon correctly asserts, this court has previously made an exception to these general rules when dealing with such a motion.

In *In re Grand Jury Proceedings (Manges),* 745 F.2d 1250 (9th Cir.1984), the sole proprietor of a Texas corporation, under investigation for possible criminal conduct, appealed from a district court order denying his motion to quash a grand jury subpoena directed at his bookkeeper. This subpoena directed the bookkeeper to produce all records in her custody relating to appellant's sole proprietorship. *Id.,* 745 F.2d at 1251. In agreeing to entertain appellant's claim, this court held that while denial of a motion to quash a subpoena is not ordinarily an appealable interlocutory order, an exception

could be made for "that limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claim." *Id.,* 745 F.2d at 1251 n. 2 (quoting *United States v. Ryan,* 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971)).

The court explained that the normal procedure of refusing to obey the subpoena and litigating its validity in subsequent contempt proceedings was not open to the appellant because the subpoena was directed to his subordinate and not to him personally. *In re Grand Jury Proceedings (Manges),* 745 F.2d at 1251 n. 2. The court has since noted a "well recognized exception to the rule precluding an appeal from a denial of a motion to quash a subpoena duces tecum when the subpoena is directed to a third party." *In re Grand Jury Proceedings Dated Dec. 10, 1987,* 926 F.2d 847, 853 (9th Cir.1991).

The present case contains facts which similarly validate Kinamon's appeal from the district court's denial of his motion to quash. While Kinamon is under investigation for possible federal criminal civil rights violations, the government has issued a subpoena directed at Kirkland, Kinamon's superior, directing Kirkland to produce an internal affairs investigation containing Kinamon's compelled statements. Like the appellant in *In re Grand Jury Proceedings (Manges),* Kinamon cannot challenge the subpoena in a later contempt proceeding since it was directed to a third party. Kinamon therefore correctly asserts that the court has jurisdiction over this appeal, either as a practical matter under 28 U.S.C. § 1291 and/or 28 U.S.C. § 1292, or pursuant to this court's decision in *In re Grand Jury Proceedings (Manges).* Accordingly, Kinamon's appeal is procedurally sound.

### II. *The District Court's Denial of the Motion to Quash and the Motion for Reconsideration*

The district court focused on two principles in denying both Kinamon's original motion to quash and the City's subsequent motion for reconsideration. First, in denying the motion to quash, the district court questioned

the RPD's ability to grant use immunity to Kinamon to protect his compelled statements. Second, in denying both the motion to quash and the motion for reconsideration, the district court asserted that a grand jury investigation is not a criminal proceeding. The district court erred as to both principles.

### A. *The RPD's Authority to Grant Use Immunity to Kinamon*

■ As a general principle, the Fifth Amendment provides that an individual may not be compelled to answer a question unless, at a minimum, he is shielded from the use of his compelled answers, and any evidence derived therefrom, in any subsequent criminal case in which he is a defendant. *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972). In *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the Supreme Court held that the Fifth and Fourteenth Amendments prohibit use in subsequent criminal proceedings of statements obtained under threat of removal from office. The Court specifically held that this is a broad ban, which "extends to all, whether they are policemen or other members of our body politic." *Id.*, 385 U.S. at 500, 87 S.Ct. at 620. Similarly, in *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52, 77–78, 84 S.Ct. 1594, 1608–09, 12 L.Ed.2d 678 (1964), the Court held that the constitutional privilege against self-incrimination protects a state witness against incrimination under federal as well as state law.

Appellate courts have followed these principles in assessing the scope of use immunity. In *Uniformed Sanitation Men Association, Inc. v. Commissioner of Sanitation of the City of New York*, 426 F.2d 619 (2d Cir.1970), while evaluating an action for reinstatement filed by discharged New York City sanitation employees, the Court of Appeals for the Second Circuit held that a witness who is compelled to give testimony over objection derives his protection against self-incrimination from the Fifth Amendment and need not seek any other statutory basis for such protection. *Id.*, 426 F.2d at 626.

Measured against this precedential backdrop, the district court's statement, that "it is highly doubtful that the Reno Police have the authority to grant Kinamon use immunity," E.R. 4, is incorrect. Indeed, even the government concedes that it "treats statements made under the circumstances presented in this case as immunized." Opening Brief of Appellee at 5. Consequently, this first basis for the district court's decision is flawed.

### B. *The Grand Jury and Immunized Testimony*

■ The Supreme Court has held that the scope of immunity provided by the federal witness immunity statute, 18 U.S.C. § 6002, is coextensive with the scope of the Fifth Amendment privilege against self-incrimination. *Kastigar*, 406 U.S. at 453, 92 S.Ct. at 1661. 18 U.S.C. § 6002 provides:

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court *or grand jury* of the United States,

(2) an agency of the United States, or

(3) either House of Congress, a joint committee, or a subcommittee of either House, and the person presiding over the proceedings communicates to the witness an order issued under this part [18 U.S.C. § 6001 et seq.], the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; *but no testimony or other information compelled under the order (or any information) may be used against the witness in any criminal* case[.]

(Emphasis added). As Kinamon correctly asserts, Section 6002's prohibition against the use of immunized testimony covers such use at grand jury proceedings as well as at trial. *See In re Grand Jury Proceedings (Trimiew)*, 9 F.3d 1389, 1390 (9th Cir.1993); *United States v. Gregory*, 730 F.2d 692, 697 (11th Cir.1984) (citing *United States v. Beery*, 678 F.2d 856, 860 (10th Cir.1982); *United States v. Kurzer*, 534 F.2d 511 (2d Cir.1976), accord, *United States v. Byrd*, 765 F.2d 1524 (11th Cir.1985).

■ Consequently, the district court's statement that "a grand jury proceeding is

not a criminal proceeding," is also incorrect. A grand jury is no more entitled to use a witness' immunized testimony against him to reach an indictment than is a trial jury permitted to use such testimony to reach its verdict.

In *United States v. Zielezinski*, 740 F.2d 727 (9th Cir.1984), this court considered the indictment of a defendant who had testified before a grand jury under a grant of use immunity. The court held that, under *Kastigar*, the defendant was entitled to a hearing at which the government had to establish independent evidentiary sources for the indictment. *Zielezinski*, 740 F.2d at 733. However, in reaching this conclusion, the court rejected a rule flatly prohibiting a grand jury from indicting a witness who has testified before it under a grant of immunity. *Zielezinski*, 740 F.2d at 728; *contra United States v. Hinton*, 543 F.2d 1002 (2d Cir.1976), *cert. denied*, 430 U.S. 982, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977) (2nd Circuit reasoned that government can never meet burden of proving that indictment rests on wholly independent sources where grand jury hears testimony by an immunized witness). *See also United States v. Crowson*, 828 F.2d 1427, 1429 (9th Cir.1987) (9th Circuit refused to adopt per se rule requiring withdrawal of prosecution officials who had access to defendant's compelled testimony).

On remand, the district court should follow the reasoning of *Zielezinski* to determine when a *Kastigar* hearing is necessary in the instant case to protect Kinamon's Fifth Amendment privilege against self-incrimination. How such a hearing should be conducted is a matter within the discretion of the district court.

### CONCLUSION

We reverse the district court's orders because the district court relied on two erroneous legal propositions in holding that production of the internal affairs report containing Kinamon's immunized testimony to the grand jury will not violate his Fifth Amendment privilege against self-incrimination. The district court must be allowed an opportunity to reevaluate its conclusion in light of the correct legal positions. REVERSED and REMANDED.