#### In re GRAND JURY SUBPOENA.

#### UNITED STATES of America, Plaintiff–Appellee,

v.

#### ROCKWELL INTERNATIONAL CORPORATION, ROCKETDYNE DIVISION, Defendant,

and

#### John Doe, et al., Appellants.

No. 97–55089.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1997.

Decided July 10, 1997.

Mark C. Holscher, James R. Asperger, Molly M. White, O'Melveny & Myers, Los Angeles, CA; John D. Vandevelde, John S. Crouchley, Talcott, Lightfoot, Vandevelde & Sadowsky, Los Angeles, CA; Leonard Sharenow, Los Angeles, CA, for appellants.

William W. Carter, Assistant United States Attorney, Los Angeles, CA, for plaintiff-appellee.

Before: THOMPSON and T.G. NELSON, Circuit Judges, and FITZGERALD,[*] District Judge.

T.G. NELSON, Circuit Judge:

■ Three potential targets of an ongoing grand jury investigation ("Does" or "the appellants") appeal the district court's refusal to exercise its supervisory powers to monitor the grand jury's proceedings and to hold a pre-indictment hearing pursuant to *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (a *"Kastigar* hearing").[1] Because we lack jurisdiction, we dismiss the appeal.

## FACTS AND PROCEDURAL HISTORY

Rockwell International Corporation, Rocketdyne Division ("Rocketdyne"), is a compa-

---

[*] Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.

1. It is a violation of the Fifth Amendment's protection against self-incrimination for the Government to use an individual's compelled statements in a grand jury proceeding to seek an indictment against that individual. A *Kastigar* hearing requires the Government to bear "the heavy burden of proving an independent source for all its evidence" apart from the compelled statement. *In re Grand Jury Subpoena (Huntington Beach Police Officers Ass'n),* 75 F.3d 446, 448 (9th Cir. 1996).

ny that tests and markets various rocket fuel compounds. On July 26, 1994, an explosion occurred at Rocketdyne's Santa Susana Field Laboratory in Simi Hills, California, killing two Rocketdyne employees and injuring a third employee. Rocketdyne conducted an internal investigation by interviewing several employees, including the appellants in this appeal, and examining physical evidence relating to the cause of the explosion. In September 1994, the internal investigative team completed its final report and submitted it to company officials.

On January 25, 1995, two attorneys retained by Rocketdyne interviewed one of the appellants ("Doe # 1") at Rocketdyne's offices regarding the chemical-burning practices of Rocketdyne employees, which were the subject of a California OSHA administrative enforcement action. Rocketdyne alleges that prior to the interview, one of its attorneys advised Doe # 1 that she represented Rocketdyne, not Doe # 1, and that Rocketdyne held the attorney-client privilege and could waive it. Doe # 1 denies that Rocketdyne ever made such a representation prior to the interview. After the interview, Rocketdyne's attorneys prepared a memorandum summarizing the substance of the interview ("the Memorandum").

On July 13, 1995, a federal criminal search warrant was served on Rocketdyne's offices at Simi Hills for evidence relating to the unlawful storage, treatment, and disposal of hazardous explosive waste. After the search warrant was served, Rocketdyne provided separate counsel for the appellants.

On April 11, 1996, Rocketdyne entered a corporate guilty plea to three violations of the Resource Conservation and Recovery Act (42 U.S.C. § 6928(d)(2)(A)). Pursuant to the plea agreement, Rocketdyne agreed to cooperate with and assist the Government in its ongoing investigation of the 1994 explosion, including identifying and locating witnesses with relevant information. Rocketdyne also agreed to provide certain internal documents relating to the explosion, including its internal investigation report and the Memorandum.

On May 20, 1996, the attorney for Doe # 1 advised the Government that Doe # 1 objected to the release of the Memorandum because at the time of the interview, Doe # 1 believed the interview would remain confidential. Because Rocketdyne refused to release the Memorandum until this dispute was resolved, the Government prepared a grand jury subpoena on June 17, 1996, to compel the memo's production by July 31, 1996.

On July 30, 1996, Doe # 1 filed a motion to quash the grand jury subpoena, arguing that the Memorandum prepared by Rocketdyne's attorneys was protected by either the attorney-client privilege or the "common interest" privilege. At a hearing on October 10, 1996, the district court inquired whether the Fifth Amendment issues discussed in *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (regarding compelled statements), were relevant to the case and requested supplemental briefing. Following supplemental briefing on the issue, the district court orally denied the motion to quash on October 24, 1996, ruling that the Memorandum was not protected by either asserted privilege. Regarding the *Garrity* issue, the district court orally ruled that its resolution was "premature."

On November 1, 1996, Doe # 1 filed a second supplemental memorandum with the district court, developing the argument that the Memorandum (summarizing Rocketdyne's interview of Doe # 1) and the internal investigation report (which contained interviews of Doe # 1 and the other appellants) were "compelled statements" protected by the Fifth Amendment. The other appellants joined Doe # 1's motion on these grounds.[2] The appellants asked the district court to exercise its supervisory powers and conduct a *Kastigar* hearing to determine whether the Government was improperly using these statements in the grand jury proceedings to seek indictments against them.

2. The appellants argue that their statements were compelled because Rocketdyne was motivated by the probability that its failure to cooperate with the Government would result in the irreversible loss of rocket fuel contracts with the United States. Thus, Rocketdyne's private actions compelling its employees to give interviews relating to the explosion could be attributed to the Government. We do not comment on the merits of this argument in this appeal.

On December 19, 1996, the district court issued its written order denying the motion to quash the subpoena and denying the request to hold a *Kastigar* hearing. With respect to the appellants' request that the district court exercise its supervisory powers and hold a *Kastigar* hearing, the district court ruled:

Constitutional considerations are implicated only if the grand jury uses the testimony in reaching a decision to indict. No indictment has issued in this instance. Furthermore, the movants have not shown actual use of the statements against the movants within the grand jury proceedings sufficient to invoke Fifth Amendment protections. Thus, at this stage, a motion predicated on Fifth Amendment grounds is premature.

This timely appeal followed.[3]

## DISCUSSION

■ We lack jurisdiction over this interlocutory appeal. The appellants argue that we have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291 and *In re Grand Jury Subpoena Issued to Bailin*, 51 F.3d 203 (9th Cir.), *cert. denied*, — U.S. ——, 116 S.Ct. 472, 133 L.Ed.2d 402 (1995). The appellants are incorrect.

■ In *Bailin*, Edward Silva appealed the district court's denial of his motion to quash a grand jury subpoena issued to Bailin, Silva's tax accountant. Silva alleged that certain documents were privileged and thus not subject to disclosure. On the jurisdictional question, we noted that "[g]enerally, the denial of a motion to quash a subpoena is a nonappealable interlocutory order." *Id.* at 205. However, a narrow exception exists "where the subpoena is directed at a third party who 'cannot be expected to risk a contempt citation' in order to preserve the movant's right to appeal." *Id.* (quoting *In re*

*Grand Jury Subpoena Served Upon Niren*, 784 F.2d 939, 941 (9th Cir.1986)). Under such circumstances, the district court's order is immediately appealable.

■ In this case, the appellants argue that they, too, are appealing the district court's denial of a motion to quash a subpoena that was directed at documents held by a third party: Rocketdyne. Like the appellant in *Bailin*, Doe # 1 argued in the district court that the subpoenaed documents were protected by two privileges: the attorney-client privilege and the "common interest" privilege.[4] The district court rejected these arguments, concluding that "[f]or these reasons, [Doe # 1's] motion to quash is DENIED."

The jurisdictional problem arises because the appellants have not appealed this conclusion by the district court. The appellants make no argument on appeal that the district court incorrectly denied the motion to quash or improperly failed to find that the targeted documents were privileged. Rather than object to the *production* of the targeted documents, the appellants only argue that the district court improperly refused to exercise its supervisory powers to hold a pre-indictment *Kastigar* hearing in order to determine if the Government was *using* the targeted documents in the grand jury proceedings to seek indictments against them. The district court treated this argument as a second motion, separate and distinct from the motion to quash the subpoena; it noted that it was reviewing the appellants' request that the court "exercise its supervisory powers to bar use of their allegedly compelled statements by the prosecution in the grand jury investigation, and to hold a *Kastigar* evidentiary hearing."

The appellants do not ask us in this appeal to reverse the district court's order and direct the entry of an order quashing the

---

3. At this date, the grand jury has still not indicted any of the appellants in this case.

4. There is some ambiguity in the appellants' opening brief as to which arguments Doe # 1 made in the district court were joined by the other appellants. The language of the joinder memoranda demonstrates that both appellants joined Doe # 1's request for the district court to

hold a *Kastigar* hearing in the hope of obtaining relief prohibiting the Government's allegedly improper use in grand jury proceedings of statements the appellants claimed were compelled. The district court correctly construed the joinder memoranda not to join in the argument that the grand jury subpoena should be quashed on privilege grounds.

grand jury subpoena. Instead, the appellants ask us to reverse and "instruct the district court to prevent the Government from using the targets' compelled statements to obtain an indictment against them." (Appellants' Opening Brief at 29–30.) The part of the district court's order refusing to exercise its supervisory powers over ongoing grand jury proceedings, however, is not a final appealable order, and we lack jurisdiction to review it.

This case is similar to the situation presented in *In re Federal Grand Jury Investigation of Fendler*, 597 F.2d 1314 (9th Cir. 1979). In *Fendler*, the appellant appealed a district court's interlocutory order denying his petition to conduct a voir dire of the grand jurors in an ongoing grand jury investigation "regarding their possible bias, prejudice, or economic interest." *Id.* at 1315. Noting that "[a]ppellate courts are particularly reluctant to intrude into grand jury proceedings," we dismissed the appeal for lack of jurisdiction. *Id.* at 1315–16.

Echoing the circumstances present in this case, we concluded in *Fendler*:

> There is no reason to depart from the policy against piecemeal appeals in this case. If and when an indictment is returned against appellant, he can raise his claims in a motion to dismiss the indictment, 28 U.S.C. § 1867(e) and Fed. R.Crim.P. 6(b)(2); and since denial of such a motion is reviewable on direct appeal from a criminal conviction, denial of review now will not render review impossible.

*Id.* at 1315. The appeal of the district court's refusal to exercise its supervisory powers over the ongoing grand jury proceedings in this case is simply premature. No indictment has yet been returned against any of the appellants. Perhaps one will never be returned. The district court's denial of the appellants' request that the court exercise its supervisory powers by holding a *Kastigar* hearing will be reviewable on direct appeal from a criminal conviction, if one ever results. The district court's decision not to exercise its supervisory powers over an ongoing grand jury investigation by holding a pre-indictment *Kastigar* hearing, however, is

not a final appealable order under 28 U.S.C. § 1291.

At oral argument, the appellants cited three cases to support their argument that we have jurisdiction to review the district court's refusal to exercise its supervisory powers over ongoing grand jury proceedings: *In re Grand Jury Proceedings (Kinamon)*, 45 F.3d 343 (9th Cir.1995); *In re Grand Jury Subpoena (Huntington Beach Police Officers Ass'n)*, 75 F.3d 446 (9th Cir.1996); and *United States v. Anderson*, 79 F.3d 1522 (9th Cir.1996). Any interpretation of these cases that would allow the potential target of an ongoing grand jury investigation to immediately appeal a district court's denial of a request for a pre-indictment *Kastigar* hearing is incorrect.

In *Kinamon*, a police officer appealed the district court's denial of his motion to quash a grand jury subpoena seeking an internal investigation report prepared and held by the Reno police department regarding an incident involving Kinamon and other Reno police officers. *Kinamon*, 45 F.3d at 344. Kinamon argued that the internal report contained his compelled statements which were protected from use in a criminal proceeding. The district court denied the motion to quash, reasoning that a grant of use immunity for Kinamon, which it doubted the Reno police department had authority to grant, would not protect him from a grand jury proceeding because such a proceeding was not a criminal matter. *Id.* at 345.

On appeal, we exercised jurisdiction, noting that Kinamon's appeal was "procedurally sound" because Kinamon fit within the *Bailin* exception that allows an appeal from the denial of a motion to quash a subpoena duces tecum directed to a third party. *Id.* at 346. We reversed the district court, holding that it had incorrectly concluded that the Reno police department lacked authority to treat Kinamon's statements as immunized and that a grand jury could use such immunized testimony to return an indictment because grand jury proceedings were not criminal proceedings. *Id.* at 347–48. At the end of the opinion, we directed the district court to determine when a *Kastigar* hearing would be warranted to protect Kinamon's Fifth

Amendment privilege against self-incrimination. *Id.* at 348. We did not order the district court to conduct a *Kastigar* hearing, nor were we reviewing the district court's exercise of its supervisory powers over an ongoing grand jury proceeding. *Kinamon* may be distinguished from what we are asked to do here. In *Kinamon,* we held that the district court relied on erroneous legal propositions in denying the motion to quash. Here, we are faced with the separate issue of whether the district court may be compelled to hold a *Kastigar* hearing during an ongoing grand jury investigation.

In *Huntington Beach,* several police officers appealed the district court's denial of their motion to quash a grand jury subpoena directed to the Huntington Beach Police Department, arguing that the *production* of an internal investigation report containing the officers' statements would violate their Fifth Amendment rights. *Huntington Beach,* 75 F.3d at 447. We rejected their argument, holding that "the protection of the Fifth Amendment privilege, when applied to statements by police officers in internal affairs files, must focus on the *use* of those statements against the officers who gave them. The statements are not privileged from production." *Id.* at 448. The protection of the officers' Fifth Amendment rights against the improper use of their compelled statements, we noted, could be provided by "a later *Kastigar* hearing." *Id.* We did not require the district court to hold an immediate *Kastigar* hearing, nor did we set a point in the proceedings when a *Kastigar* hearing would be required. We simply held that the Fifth Amendment did not prevent the *production* of the targeted documents under the circumstances of the case. In this appeal, the appellants do not argue that their statements were subject to an improper *production;* only that the *use* of the statements by the grand jury, if it is occurring at all, violates their Fifth Amendment rights.

In *Anderson,* a grand jury indicted Anderson on multiple counts of wire fraud following the production of Anderson's deposition testimony. After the indictment was issued and the grand jury proceedings had ended, Anderson moved the district court for a *Kastigar* hearing, which the district court denied after concluding that Anderson's testimony was not immunized or compelled. *Anderson,* 79 F.3d at 1525. On appeal, we affirmed the district court's denial of Anderson's motion for a *Kastigar* hearing, finding no abuse of discretion. *Id.* at 1531.

We are faced with a vastly different procedural posture in this case. Here, the grand jury has not returned a single indictment against any of the three appellants. The appellants might never be indicted. The district court, having been presented with a motion to exercise its supervisory powers over ongoing grand jury proceedings, declined to hold a pre-indictment *Kastigar* hearing. This motion was independent and distinct from Doe # 1's motion to quash the grand jury subpoena (to prevent the *production* of the targeted statements), and the district court's denial of the motion to quash was not appealed by the appellants. We therefore hold that 28 U.S.C. § 1291 does not permit appellate jurisdiction over appeals from a district court's denial of a motion requesting it to exercise its supervisory powers over ongoing grand jury proceedings to hold a pre-indictment *Kastigar* hearing.

Contrary to the appellants' assertions, they are not left without a remedy by our decision today. If and when the grand jury returns an indictment against one or more of the appellants, the indicted individual can move the district court to quash the indictment. If the case proceeds to trial and results in a criminal conviction, the district court's denial of the motion to exercise its supervisory powers to hold a *Kastigar* hearing is reviewable in this court on direct appeal. *See Fendler,* 597 F.2d at 1315. At this stage in the proceedings, however, during an ongoing grand jury investigation, there is "no reason to depart from the policy against piecemeal appeals." *Id.*

## CONCLUSION

Because we lack jurisdiction over this appeal from the district court's denial of the appellants' motion requesting the district court to exercise its supervisory powers to hold a pre-indictment *Kastigar* hearing dur-

ing ongoing grand jury proceedings, we dismiss the appeal.

APPEAL DISMISSED.