**ESTATE OF BUI, et al., Plaintiffs,**

v.

**CITY OF WESTMINSTER POLICE DEPARTMENT; City of Westminster; Charles Shinn III; County of Orange; Orange County Sheriff's Department and Does 1 to 100, inclusive, Defendants.**

**No. SACV 05–0774 CJC (RNBx).**

United States District Court,
C.D. California,
Southern Division.

Aug. 3, 2007.

John P. Kristensen, John T. Lupton and Michael F. Avila, Avila and Peros, Los Angeles, CA, for plaintiff.

Darren G. Mayers and Kevin M. Osterberg, Haight, Brown and Bonesteel, Riverside, CA, Albert P. Ballog, Jr., Brian L. Williams and Daniel R. Sullivan, Sullivan & Ballog, Santa Ana, CA, for defendants.

## ORDER OVERRULING DEFENDANTS' OBJECTIONS TO DISCOVERY ORDER OF MAGISTRATE JUDGE BLOCK

CARNEY, District Judge.

### I. INTRODUCTION

Defendants City of Westminster Police Department ("WPD") and Officer Charles

Shinn, III ("Officer Shinn") (collectively, "Defendants") object to the discovery order of Magistrate Judge Block requiring them to produce the WPD's internal affairs investigation report ("IA report") in the context of a § 1983 civil rights action regarding the death of Hoang Tan Bui, Plaintiffs' decedent.[1] The IA report is based on and includes compelled statements made by Officer Shinn during an internal affairs investigation performed after the shooting and car collision that led to Mr. Bui's death. Defendants argue that requiring disclosure of the IA report would violate Officer Shinn's rights under the Fifth Amendment as well as the WPD's official information privilege. The Court disagrees and confirms Magistrate Judge Block's order requiring disclosure of the IA report including Officer Shinn's statements. Officer Shinn's rights under the Fifth Amendment are only violated if his statements are used in a criminal case. Use in a civil case, like this one, does not result in a Fifth Amendment violation. In addition, Plaintiffs' legitimate need for obtaining the WPD's IA report outweighs the speculative, potential disadvantages of disclosure cited by the WPD to support its claim of official information privilege.

## II. FACTUAL BACKGROUND

Hoang Tan Bui was a 30-year old Vietnamese–American man. Plaintiffs allege that on February 9, 2005 at approximately 10:30 p.m., Mr. Bui was in his vehicle when he was stopped by Officer Shinn at an intersection in the City of Westminster. Compl. at ¶ 24. The alleged reason for the stop was a misdemeanor traffic violation involving property damage. *Id.* During the course of this stop, Plaintiffs allege that Officer Shinn, without provocation or justification, used unreasonable deadly force in drawing his firearm and discharging it with the intent and result of shooting Mr. Bui. *Id.* at ¶ 30. Plaintiffs further allege that having been shot, Mr. Bui fled the scene in his vehicle and was chased in a high-speed pursuit by Officer Shinn and other members of the Westminster Police. *Id.* at ¶ 33. After exiting his car,

Mr. Bui attempted to flee from Officer Shinn on foot. *Id.* at ¶ 36. Upon seeing him, Officer Shinn, according to Plaintiffs, deliberately steered his patrol vehicle at Mr. Bui and hit him, causing Mr. Bui's death. *Id.* at ¶ 39.

Shortly after the incident, Sergeant Kingsmill ("Sgt.Kingsmill") came to the scene, asked Officer Shinn a series of questions, and had Officer Shinn draw a diagram indicating his position when he fired his weapon. These questions and the actions taken by Sgt. Kingsmill were recorded in an administrative memorandum that Sgt. Kingsmill prepared within a couple days of the incident. In that same time period, the WPD also initiated an administrative investigation of Officer Shinn's conduct. In this investigation, the WPD compelled Officer Shinn to answer its questions pursuant to Officer Shinn invoking his Fifth Amendment privilege. Based on Officer Shinn's statements, Sgt. Kingsmill's memorandum, and the subsequent evaluations of other commanding officers, the WPD created an IA report regarding the incident involving Officer Shinn's use of his firearm and his collision with Mr. Bui. This IA report is what Plaintiffs now seek to discover.

The WPD's internal affairs investigation was not the only investigation into the matter involving the death of Mr. Bui. After the incident, the California Highway Patrol (CHP) performed a traffic collision investigation while the Orange County Sheriff's Department performed an independent criminal investigation. Neither of these investigations, however, resulted in any disciplinary or punitive action against Officer Shinn or against any of the other defendants in this case. The Sheriff's Department's investigation was reviewed by the Orange County District Attorney's office who ultimately decided not to bring criminal charges against Officer Shinn. Additionally, Plaintiffs have represented to the Court that the Attorney General, while he can still reopen the case, has closed the criminal investigation into Officer Shinn's conduct with regard to the death of Mr. Bui.

1. "Plaintiffs" refers to the Estate of Hoang Tan Bui, Bich Phuong Tran, John Lee, Rose Bui Lee, Caroline Bui Tran, and Donny Tan Bui.

The WPD, however, has terminated Officer Shinn. Defs.' Reply at 4. This decision was apparently based on Officer Shinn's conduct leading to the death of Mr. Bui and on the conclusions reached in the WPD's IA report. Officer Shinn's administrative appeal of the decision to terminate is pending.

On May 15, 2007, Plaintiffs moved to compel production of the WPD's IA report before Magistrate Judge Block. Defendants opposed the motion on the basis of Officer Shinn's Fifth Amendment privilege and the official information privilege. After hearing arguments from Plaintiffs and from the WPD, Magistrate Judge Block found that the Fifth Amendment privilege and the official information privilege do not apply to the requested documents in this action. Magistrate Judge Block ruled in favor of Plaintiffs and ordered the WPD to produce the documents at issue including Officer Shinn's statements and diagram. Defendants object to Magistrate Judge Block's ruling on the same privilege grounds as stated in their opposition to Plaintiffs' motion to compel.[2] This Court, however, agrees with Magistrate Judge Block regarding the inapplicability of such privileges and overrules Defendants' objections to his order.

## III. ANALYSIS

Under Federal Rule of Civil Procedure 72(a), a party may object to a non-dispositive pretrial order of a United States Magistrate Judge within ten days after service of the order. FED.R.CIV.P. 72(a). However, the magistrate judge's decision will be upheld unless it was "clearly erroneous or contrary to law." Id.; 28 U.S.C. § 636(b)(1)(A). After reviewing Magistrate Judge Block's ruling granting Plaintiffs' Motion to Compel Production of Documents, the Court finds that Magistrate Judge Block's decision was neither clearly erroneous nor contrary to law.

Plaintiffs state eleven claims for relief including claims for: violation of the Fourth Amendment, violation of the Fourteenth Amendment's due process clause, violation of the Fourteenth Amendment's equal protection clause, wrongful death, breach of the state law duty to properly and impartially investigate, violation of Plaintiffs' First Amendment rights to freedom of speech, religion and association, assault and battery, negligence, intentional infliction of emotional distress, and survival. Under Federal Rule of Civil Procedure 26(b)(1), Plaintiffs may obtain discovery regarding any matter relevant to any of these claims, subject to applicable privileges. FED.R.CIV.P. 26(b)(1); see also Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ("the way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.") The documents sought by Plaintiffs are relevant to Plaintiffs' claims. The WPD, however, argues that the documents are privileged under the official information privilege and under Officer Shinn's Fifth Amendment privilege. After listening to the parties' arguments, reading the briefs submitted by Plaintiffs, the WPD, and Officer Shinn, and reviewing in camera the documents in question, this Court, in accord with Magistrate Judge Block's June 5, 2007 order, finds that these privileges do not apply.

### A. Fifth Amendment Privilege

The Fifth Amendment states that "no person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. As is clear from the text of the Fifth Amendment, a compelled statement of a person cannot be used against him in a criminal case. Thus, until a compelled statement is used in a criminal case, there is no Fifth Amendment violation. Accordingly, use of a person's compelled statement in a civil case against him does not violate the person's Fifth Amendment right against self-incrimination.

In Chavez v. Martinez, 538 U.S. 760, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003), the United States Supreme Court rejected the argument that a person's Fifth Amendment rights could be violated when that person's

---

**2.** Defendants also objected to Magistrate Judge Block's ruling on procedural grounds. Because Defendants have now been given the opportunity to be fully heard before this Court, such procedural objections are moot.

compelled statements were never used in a criminal case against him. In that case, the plaintiff brought a § 1983 action against a police officer alleging that the officer violated his Fifth Amendment privilege by subjecting him to coercive interrogation after he had been shot by another police officer. Reversing the district court and Ninth Circuit decisions, the Supreme Court held that the officer "was never made to be a 'witness' against himself in violation of the Fifth Amendment's Self-incrimination Clause because his statements were never admitted as testimony against him in a criminal case. Nor was he ever placed under oath and exposed to 'the cruel trilemma of self-accusation, perjury or contempt.'" *Id.* at 767, 123 S.Ct. 1994 (citations omitted). Similarly here, Officer Shinn's statements are not being admitted as testimony against him in a criminal case, nor is Officer Shinn being forced to testify under oath. This is a civil case where Plaintiffs are seeking discovery of statements already made by Officer Shinn to the WPD.

The Ninth Circuit's decision in *In re Grand Jury Subpoena,* 75 F.3d 446 (9th Cir. 1996), is also instructive on the issue of the discoverability of police officers' compelled statements made during an internal affairs investigation. In that case, police officers moved to quash a grand jury subpoena issued by the Department of Justice in a civil rights investigation of the police department. The grand jury subpoena sought discovery of compelled statements made by the police officers during an internal affairs investigation. The police officers moved to quash the subpoena arguing that production of their compelled statements violated the officers' Fifth Amendment rights. The Ninth Circuit, how-ever, rejected the officers' argument and affirmed the order denying the officers' motion to quash. The Ninth Circuit held that for *previously* compelled statements, the focus of the Fifth Amendment privilege becomes the use, not the obtaining, of those statements. In other words, a Fifth Amendment analysis requires the Court to ask whether compelled statements are actually being used in a criminal case, not whether such statements were properly obtained in the first instance. *Grand Jury,* 75 F.3d at 448.[3]

In this case, Magistrate Judge Block correctly concluded that the WPD and Officer Shinn cannot withhold Officer Shinn's compelled statements from discovery. Plaintiffs seek to use Officer Shinn's compelled statements in a civil case, not in a criminal case against him. Because the Fifth Amendment privilege only protects against use of Officer Shinn's compelled statements in a criminal case against him, it cannot be applied to prevent discovery of those statements in a civil rights action.

## B. Official Information Privilege

 The official information privilege must be tailored to accommodate the specific competing interests involved when information is being sought from local law enforcement agencies. *Kelly v. City of San Jose,* 114 F.R.D. 653, 659 (N.D.Cal.1987). The *Kelly* case outlines ten factors courts have used in determining whether to apply this privilege. These factors include: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2)

---

**3.** Defendants also argue that Officer Shinn is being denied his right to *assert* his Fifth Amendment privilege. In support of their argument, Defendants cite to the Supreme Court case of *Maness v. Meyers,* 419 U.S. 449, 464, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975), for the proposition that "the privilege against self-incrimination can be *asserted* 'in any proceeding civil or criminal, administrative or judicial, investigatory or adjudicatory'" (emphasis added). Defendants, however, confuse the issues of (1) assertion of the privilege before a compelled statement is made and (2) use of that statement after it has already been made. In *Maness,* an individual defendant was asked to turn over physical evidence solely in his possession. Put in that situation, a defen-dant need not come forward with new evidence or make statements that would be incriminatory. The situation here, however, is different. Here, statements have already been made. In civil proceedings, the Fifth Amendment privilege will not protect witness statements that have already been made. *Grand Jury,* 75 F.3d at 447. As stated above, once a compelled statement has been made, the legal analysis necessarily shifts to the use, rather than the obtaining, of that statement. *Id.* at 448. The Court does agree though, that disclosure of Officer Shinn's compelled statement in this case does not constitute a waiver of Officer Shinn's right to assert the Fifth Amendment privilege in this or any other case.

the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case. *See also Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D.Cal.1992).

■ Taking the first factor, it is unlikely that permitting discovery of the WPD's IA report and, more particularly, Officer Shinn's statements would have a "chilling effect" on officer candor in the context of police department internal affairs investigations. Police officers are likely answering questions posed to them in such investigations because failure to do so would risk losing their jobs. Allowing for civil discovery is thus unlikely to contribute to any preexisting disincentive for candor. It is the threat of termination that is likely more tangible at the time of questioning than the possibility of civil damages. In addition, given that officers are generally indemnified for civil rights claims, the financial threat of termination would also overshadow that of a potential civil proceeding. Finally, the possibility of review by a state or federal court may, if anything, encourage officer candor. *See King v. Conde*, 121 F.R.D. 180, 193 (E.D.N.Y.1988). Defendants provide no empirical evidence that disclosure in civil proceedings chills officer candor in the context of an internal affairs investigation. Because Defendants have the burden to justify assertion of the official information privilege, the Court cannot find that this factor favors application of the privilege.

The second *Kelly* factor is not relevant to this situation. Officer Shinn's identity is clearly known. The third factor, degree of chilling on government self-evaluation, may weigh in favor of applying the privilege. However, this is only one factor that must be balanced along with other relevant considerations. In addition, as applied in this case, any fear of *Monell* liability must take into account the known conclusion of the Department's investigation: Officer Shinn was fired. The reality here is that the WPD's IA report is not a self-evaluation as much as it is an evaluation of Officer Shinn's conduct.

The fourth *Kelly* factor does not conclusively weigh for or against application of the privilege. While the WPD's IA report includes opinions, conclusions and evaluative summaries, it is still based on factual investigations. These investigations are highly relevant and likely trustworthy given their protection against use in criminal proceedings and the relatively immediate timing of the investigations after the incident. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988).

With regard to the fifth factor under *Kelly*, Officer Shinn is not currently an actual defendant in any criminal proceeding. Because the criminal statute of limitations does not run until February of 2008, Officer Shinn could still be held criminally liable. However, any decision to reopen Officer Shinn's criminal case would need to be justified independently from the materials now at issue. For these reasons, any risk of harm considered under the fifth *Kelly* factor due to disclosure of the documents would be minimal.

The sixth *Kelly* factor weighs in favor of production. The internal affairs investigation at issue has been completed. As for the seventh factor, intradepartmental proceedings have also arisen resulting in Officer Shinn's termination. While Officer Shinn's administrative appeal of his termination is still pending, Plaintiffs have a strong interest in knowing why the WPD reached its decision to terminate in the first place.

This leads to the eighth, ninth and tenth factors which all weigh heavily in support of production. This is a case with a dead man, a dead father, a dead husband. As far as Plaintiffs are concerned, the only persons

present at the shooting and at the collision with Mr. Bui, were Mr. Bui and Officer Shinn. Mr. Bui is now dead, and Officer Shinn's statements are being withheld. Furthermore, Plaintiffs allege that the investigation performed by the CHP and the Orange County Sheriff's Department were incomplete and unreliable. Officer Shinn's statements, therefore, are highly relevant and important for proving or disproving Plaintiffs' claims. In addition, Officer Shinn has been discharged from the WPD, defeating any argument that Plaintiffs' suit is frivolous or was brought in bad faith.

Applying the ten-factor *Kelly* test, the Court finds that the WPD cannot assert an official information privilege to justify withholding any portion of the IA report sought by Plaintiffs.[4] Balancing the competing interests involved in this case, Plaintiffs' interest in disclosure of the IA report outweighs the WPD's unsubstantiated claim that such disclosure would have "a substantial chilling effect" on the Department's ability to internally police its own officers, develop policy changes and provide corrective training. Decl. of Westminster Police Chief Andrew Hall in Supp. of Produc. Resp. and Privilege Log at ¶ 8.

## IV. CONCLUSION

The Court hereby orders that production shall be made subject to the conditions outlined in Magistrate Judge Block's June 5, 2007 Order.[5] If Defendants wish to appeal this order, compliance with Magistrate Judge Block's order shall be stayed until and in accordance with any ruling from the Ninth Circuit Court of Appeals. Defendants have ten days to produce the requested documents or appeal this order to the Ninth Circuit.

4. The WPD asserts additional objections in the declaration attached to the IA report and filed with the Court for *in camera* review. These objections address the admissibility, not the discoverability of statements contained in the report. Under Federal Rule of Civil Procedure 26(b)(1), all the highlighted statements are in fact discoverable. The WPD's additional objections are therefore overruled.

5. Defendants have represented that diligent search efforts are continuing to find the requested sketch by Officer Shinn as referenced in Sgt. Kingsmill's report. While said sketch was not submitted to the Court for *in camera* review, production of the sketch is ordered in accordance with Magistrate Judge Block's June 5, 2007 order as soon as it is found.